IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1237 |
| | ) | |
| ERIC T. ARMEL, DEBRA A. HAWKINBERRY, WILLIAM TIFT, STEVEN GATES, LEROY STALEY, FRANK SALVAY, JAY LANE, | ) ) ) ) | Re: ECF No. 24 |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**Maureen P. Kelly, Chief United States Magistrate Judge**

Plaintiff Charles Jackson ("Plaintiff") is an inmate in the custody of the Pennsylvania Department of Corrections, who previously was incarcerated at the State Correctional Institution at Fayette ("SCI-Fayette"). Plaintiff brings this civil rights action against Defendants Eric T. Armel, Debra A. Hawkinberry, William Tift, Steven Gates, Leroy Staley, Frank Salvay and Jay Lane (collectively, "Defendants"), all of whom are employed at SCI-Fayette, alleging that they failed to protect him from assault in violation of his rights under the Eighth Amendment to the United States Constitution.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint filed pursuant to Federal Rule of Civil Procedure 12(b)(6) with a brief in support, which is opposed by Plaintiff. ECF Nos. 24, 25, 29, and 30. For the reasons that follow, Defendant's Motion to Dismiss will be granted and Plaintiff's Complaint will be dismissed.

1

All parties have consented to jurisdiction by the undersigned Magistrate Judge. See ECF Nos. 21 and 22.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that he was placed in the Restricted Housing Unit ("RHU") at SCI-Fayette on September 4, 2016, as a sanction for attempting to introduce contraband into the prison. ECF No. 8 at 3. In a Program Review Committee ("PRC") meeting held on November 29, 2016, Plaintiff supposedly informed the PRC members that he would be in danger if he was released back into the general population and he requested a transfer. Id. A form documenting the PRC meeting states that "[i]nmate reports issues with release to GP," indicates that a security review was needed to determine whether a transfer was necessary and specifies that Plaintiff would be moved to administrative custody on December 2, 2016. ECF No. 8-1, Ex. A.[1] Defendants Armel, Hawkinberry and Tift signed the form. Id.

Defendant Tift reviewed and approved a form report showing that Plaintiff was placed in administrative custody status on December 2, 2016, because "inmate is in danger by/from some person(s) in the facility and cannot be protected by alternate means." ECF No. 8-2, Ex. B. The notes of a PRC meeting held on December 6, 2016, again specify the need for a security review and indicate Plaintiff would remain in administrative custody status. ECF No. 8-3, Ex. C. Defendants Armel and Tift signed the PRC meeting notes. Id. At another PRC meeting held on December 8, 2016, Plaintiff's status was discussed, he "asked how long before he gets transferred," and he was continued in administrative custody status. ECF No. 8-4, Ex. D. Defendants Tift and Gates signed those meeting notes. Id.

---

1  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). Therefore, the Court may properly consider the exhibits attached to Plaintiff's Complaint in deciding the instant Motion to Dismiss.

Approximately two weeks later, while still in administrative custody, Plaintiff wrote to Defendant Armel on December 20, 2016, requesting to be transferred to certain prisons. ECF No. 8 at 3. Defendant Armel responded that he would "copy the security office. OPM decides where you go." ECF No. 8-5, Ex. E.

Plaintiff alleges that he was released from administrative custody back into the general population at SCI-Fayette on December 22, 2016. ECF No. 8 at 3. Plaintiff claims that he protested his release and reiterated his fear of harm, but was told that he would receive a misconduct and be returned to disciplinary custody if he refused. Id.

On January 13, 2017, Plaintiff alleges that another inmate slashed him in the face with a razor, resulting in a wound that required 13 staples. ECF No. 8 at 3, 9. According to Plaintiff, the attack was in response to his misconduct for bringing contraband into the prison and supposedly the reason he informed Defendants Armel, Hawkinberry, Tift and Gates that he would be in danger if released into the general population. Id. at 9. Following the incident, Plaintiff was issued a misconduct for fighting and placed back in the RHU. Id.

On January 18, 2017, Plaintiff filed a grievance concerning the attack, claiming that Defendant Staley said "he had things backwards," which Plaintiff interpreted to mean that Staley "didn't do his job." ECF No. 8-7, Ex. G. Plaintiff asserts that Defendants Armel, Hawkinberry, Tift and Gates, who participated in the PRC meetings, and Defendants Staley and Salvay, who were security personnel, failed to protect him after he advised them that he was in danger. ECF No. 8 at 9.

Defendant Salvay denied Plaintiff's grievance on February 3, 2017, noting that he spoke with Defendant Staley, who did not know what Plaintiff meant about him "having things backwards." ECF No. 8-8, Ex. H. Defendant Salvay's denial explained that the security office

3

had no information to indicate that Plaintiff's safety would be in jeopardy if he was released to the general population at SCI – Fayette. Id. Plaintiff subsequently appealed the denial of his grievance. ECF No. 8-9, Ex. I. Defendant Lane upheld the denial on March 10, 2017, because:

> [Plaintiff] self-reported [he] had issues with being released to general population. [He was] moved to AC status upon completion of [his] DC time. The Security Staff evaluated [his] potential release and found no credible information that [he was] in danger if released to general population. The staff did their due diligence. Information provided is attempted to be vetted before any decision is made. There [was] no way for the staff to predict [Plaintiff was] in danger if released.

ECF No. 8-10, Ex. J. Plaintiff appealed Defendant Lane's decision to the Office of Inmate Grievances and Appeals. ECF No. 8-11, Ex. K. On April 25, 2017, the Chief Grievance Officer upheld Defendant Lane's decision because the record showed that the security office at SCI-Fayette did not have information that Plaintiff's safety was in jeopardy and there was no way staff knew that he would be assaulted. ECF No. 8-12, Ex. L.

On November 15, 2017, Plaintiff filed a pro se Complaint asserting a claim under 42 U.S.C. § 1983 based on Defendants' alleged failure to protect him from a known risk of assault. ECF No. 8 at 9. Plaintiff alleges that he suffered injuries to his face and lower back and was diagnosed with post-traumatic stress disorder after the attack. Id. at 3. Plaintiff seeks an award of damages in the amount of $800,000, consisting of $600,000 in compensatory damages and $200,000 in punitive damages. Id. at 5-6.

Defendants moved to dismiss the Complaint because Plaintiff failed to allege Defendants' personal involvement in the claimed violation of his Eighth Amendment rights. ECF Nos. 24 and 25. Plaintiff responded that Defendants' Motion to Dismiss should be denied because they "were aware of the danger of sending [him] back to the general population but through sheer indifference and reckless disregard" did so and he was subsequently attacked. ECF No. 30 at 2.

## II. STANDARD OF REVIEW

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or legal conclusions set forth as factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citation omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Because Plaintiff is proceeding pro se, the Court will liberally construe his Complaint and employ less stringent standards than when judging the work product of an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States, which was committed by a person acting under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988). Here, Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to protect him from the

assault that occurred on January 13, 2017.

Under the Eighth Amendment, prison officials "must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted). Accordingly, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id. at 833 (citation omitted). Nevertheless, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for prison officials responsible for the prisoner's safety. Id. at 834. An inmate making a failure to protect claim must establish that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm" and (2) prison officials acted with "deliberate indifference to [his] health or safety." Id. Deliberate indifference is proven by showing that a prison official "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. The knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837-38).

Further, to establish liability for the deprivation of a constitutional right, a plaintiff must sufficiently allege that each defendant had personal involvement in the alleged wrong. See Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.") (internal quotation marks and citations omitted). Personal involvement in the alleged wrongdoing can be shown "through allegations of personal direction or of actual knowledge and acquiescence" and those allegations "must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). However, a defendant's participation in the prison grievance process is

insufficient to show his personal involvement in the alleged unlawful conduct. See Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials responded inappropriately to prisoner's grievances do not establish their personal involvement in alleged underlying constitutional violation); Ramos v. Pa. Dep't of Corrections, Civ. No. 4:CV-06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) ("review and denial of the grievances and subsequent administrative appeal conducted does not establish personal involvement by those Defendants in the alleged underlying unconstitutional conduct").

Here, Plaintiff's Complaint fails to state a plausible failure to protect claim against any of the Defendants. Plaintiff claims that Defendants Armel, Hawkinberry, Tift and Gates failed to protect him after he advised that he was in danger if he returned to the general population at a PRC review meeting. However, Plaintiff has not alleged sufficient facts to suggest that each of these Defendants had personal involvement in any claimed wrongdoing or that each actually knew that Plaintiff faced an excessive safety risk. See Farmer, 511 U.S. at 837 (deliberate indifference is shown where prison official "knows of and disregards an excessive risk to inmate health or safety"); Rode, 845 F.2d at 1207 (personal involvement can be shown by allegations of actual knowledge and acquiescence). To illustrate, these Defendants determined that a security review was needed, but no allegations suggest that they were responsible for conducting the review and were personally involved in the decision to return Plaintiff to SCI-Fayette's general population. Moreover, Plaintiff only alleges that he advised these Defendants of an unspecified "danger" if he returned to the general population. ECF No. 8 at 3, 9. There are no allegations in the Complaint that Plaintiff informed any of the Defendants what the specific danger was, who purportedly presented a danger to him, whether he allegedly had previous problems with that individual or

7

whether the individual had a prior history of assaultive behavior.[2] Therefore, Defendants Armel, Hawkinberry, Tift and Gates could not have been deliberately indifferent in the absence of facts indicating a substantial risk of serious harm to Plaintiff. See Farmer, 511 U.S. at 837 (prison officials must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference"); Knox v. Doe, 487 F. App'x 725, 727-28 (3d Cir. 2012) (inmate's allegations indicating that he warned prison officials of threats to his safety in only vague and speculative terms with no underlying facts fail to support a claim that prison employees acted with deliberate indifference for failing to prevent attack).

Plaintiff also has failed to allege facts to plausibly suggest that Defendants Salvay and Lane were personally involved in the alleged constitutional violation. Other than the exhibits showing Defendant Salvay's denial of Plaintiff's grievance and Defendant Lane's decision upholding same, the Complaint contains **no** allegations concerning Lane and only broadly asserts that Salvay was one of the prison officials who failed to protect him after he advised that he was in danger. ECF No. 8 at 9. However, no factual allegations suggest that Salvay knew of and disregarded a specific threat of harm to Plaintiff or that he was personally involved in any claimed wrongdoing. As discussed, personal involvement cannot be established by a prison official's after-the-fact participation in the prison grievance process, thus Plaintiff has failed to state a plausible failure to protect claim against Defendants Salvay and Lane. See Brooks, 167 F. App'x at 925; Ramos, 2006 WL 2129148, at *2.

Finally, the Complaint barely mentions Defendant Staley, other than to broadly allege that Plaintiff filed a grievance because Staley was one of the prison officials who purportedly failed to

---

2    Indeed, Defendants Salvay and Lane explained in their decisions denying Plaintiff's grievance that the security office had no information to indicate that his safety would be jeopardized if he was released to SCI-Fayette's general population. ECF No. 8-8, Ex. H; ECF No. 8-10, Ex. J. This finding further supports the inference that Defendants did not know of and disregard an excessive risk to Plaintiff's safety.

8

protect him after he advised that he was in danger.  See ECF No. 8 at 9.  As discussed, the Complaint contains no allegations describing the claimed danger, let alone that Defendant Staley knew of any danger and disregarded it.  The only other reference to Defendant Staley appears in Plaintiff's grievance, where he claims that Staley stated "he had things backwards," which Plaintiff interpreted to mean he "didn't do his job."  ECF No. 8-7, Ex. G.  This is insufficient to plausibly suggest that Defendant Staley was personally involved in any alleged wrongdoing or had actual knowledge of a substantial risk of serious harm to Plaintiff.

In sum, Plaintiff's Complaint does not allege that Defendants personally directed or actually knew and acquiesced in the claimed constitutional violation.  Plaintiff has not alleged sufficient facts to plausibly suggest that Defendants knew he would be exposed to a substantial risk of serious harm if he returned to the general population and that they failed to take steps to ensure his safety.  Accordingly, Plaintiff has failed to state a plausible failure to protect claim and his Complaint will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint will be granted.  However, the Court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  For reasons explained above, it is clear that Plaintiff is unable to state a claim against Defendants Salvay and Lane, whose only involvement in this case was their after-the-fact review of Plaintiff's grievance, and the failure to protect claim against them will be dismissed with prejudice.  However, at this juncture, it is not as clear that Plaintiff is unable to state a plausible claim against Defendants Armel, Hawkinberry, Tift, Gates

9

and Staley. Therefore, the failure to protect claim against them will be dismissed without prejudice to Plaintiff filing an amended complaint against only these Defendants which addresses the pleading deficiencies identified in this Opinion. If Plaintiff chooses to file an amended complaint, he must do so by September 3, 2018.

An appropriate Order follows.

## ORDER

AND NOW, this 2nd day of August, 2018, for the reasons stated in the Opinion filed this day, IT IS ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 24) is GRANTED, and Plaintiff's Complaint is dismissed with prejudice as to Defendants Salvay and Lane, and the Complaint is dismissed without prejudice as to Defendants Armel, Hawkinberry, Tift, Gates and Staley. If Plaintiff chooses to file an amended complaint, he must do so by September 3, 2018.

/s/   Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:   Charles Jackson (via U.S. mail)
    All counsel of record (via CM/ECF)