IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES JACKSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ERIC T. ARMEL, DEBRA A. )<br>HAWKINBERRY, WILIAM TIFT, STEVEN )<br>GATES, LEROY STALEY, FRANK )<br>SALVAY, JAY LANE, A. YUHOUSE, S. )<br>BUZAK, DORINA VARNER, WESTERN )<br>REGIONAL DEPUTY SECRETARY OF )<br>THE PENNSYLVANIA DEPARTMENT OF )<br>CORRECTIONS, DIRECTOR BUREAU OF )<br>TREATMENT SERVICES, and JOHN DOE, )<br>)<br>Defendants. ) | Civil Action No. 17-1237<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 94 |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff Charles Jackson ("Mr. Jackson") brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. In pertinent part, Mr. Jackson alleges that his Eighth Amendment rights were violated by various corrections officers, grievance administrators, and supervisors at the Pennsylvania State Correctional Institution – Fayette ("SCI – Fayette"), when they failed to protect him from a known risk of attack.[1] ECF No. 50. Mr. Jackson alleges that each of the Defendants knew that he had been labeled a snitch and required protective housing in Administrative Custody pending a facility transfer. Despite this determination, Mr. Jackson was transferred to general population. Three weeks later, a violent gang member attacked Mr. Jackson with a razor, causing a 6-inch slash wound to his neck and face and a debilitating back injury.

---

[1] Mr. Jackson's claims for negligence and for the violation of his First Amendment rights related to the resolution of a prison grievance were dismissed upon resolution of Defendants' Motion to Dismiss. ECF No. 71.

Presently before the Court is Defendants' Motion for Summary Judgment, contending that there is insufficient evidence that any Defendant deliberately disregarded a known risk of injury upon which a finding of liability could be based. ECF No. 94. Defendants further argue that because Mr. Jackson failed to request money damages through the prison grievance process, he is precluded from recovering compensatory damages in this action. For the reasons that follow, the Motion for Summary Judgment will be granted in part and denied in part.[2]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant Procedural History

Mr. Jackson filed his initial Complaint on September 25, 2017, and alleged claims against Defendants Deputy Superintendent Eric Armel ("Armel"), Security Captain William Tift ("Tift"), Corrections Classification and Program Manager Debra Hawkinberry ("Hawkinberry"), Deputy Superintendent of Facility Management Stephen Gates ("Gates"), Security Lieutenant Leroy Staley ("Staley"), Security Captain Frank Salvay ("Salvay"), and Superintendent Jay Lane ("Lane") (collectively, "Defendants") for the violation of his rights under the Eighth Amendment to the United States Constitution. ECF No. 8. In response, Defendants filed a Motion to Dismiss contending that Mr. Jackson failed to allege facts establishing any defendant's personal involvement in the claimed violation of his rights. ECF No. 24.

The Court granted the Motion to Dismiss because it concluded that Mr. Jackson failed to allege a factual basis upon which liability could be imposed against any individual defendant. ECF No. 33. The initial Complaint further failed to allege any facts at all connecting Defendants Salvay or Lane to Mr. Jackson's claims and, accordingly, the Court dismissed all claims against them with

---

[2] Pursuant to 28 U.S.C. § 636(c)(1) and Rule 72.E.3 of the Local Rules of Court, the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case. ECF Nos. 21 and 22.

prejudice. Id. Mr. Jackson timely objected to the dismissal of these claims with prejudice and, on review, the Court amended its order to reflect that the dismissal of claims against Defendants Salvay and Lane was without prejudice. ECF No. 41.

After two extensions of time, Mr. Jackson filed his First Amended Complaint. ECF No. 50. Mr. Jackson's Amended Complaint adds as parties Security Lieutenant A. Yuhouse ("Yuhouse"), Chief Grievance Officer Dorina Varner ("Varner"), AC Unit Manager S. Buzak ("Buzak"), and three unidentified individuals: the Pennsylvania Department of Corrections Regional Deputy, the Director of the Bureau of Treatment Services, and John Doe. Id. Mr. Jackson alleges three claims in the Amended Complaint.

    a. Count I - an Eighth Amendment claim for deliberate indifference to Mr. Jackson's safety, against Defendants Armel, Hawkinberry, Tift, Gates, Staley, Lane, Yuhouse, Buzak, Regional Deputy, Director BTS and John Doe.[3]

    b. Count II - a First Amendment access to courts claim.

    c. Count III - a state law negligence claim.

Defendants again filed a Motion to Dismiss, ECF No. 57. Upon review, the Court denied the Motion to Dismiss Mr. Jackson's Eighth Amendment claim but granted the Motion to Dismiss the First Amendment and negligence claims for failing to state claims upon which relief could be afforded. ECF No. 71. Accordingly, only Mr. Jackson's Eighth Amendment claims against Defendants Armel, Hawkinberry, Tift, Gates, Staley, Lane, Yuhouse, Buzak, Salvay, Regional Deputy, Director BTS and John Doe remain at issue.[4]

---

[3] Despite the caption of Count I as a deliberate indifference to medical condition claim, the Court construes the allegations contained therein to allege an Eighth Amendment failure to protect claim.

[4] Mr. Jackson's Amended Complaint asserts additional facts against Lane and Salvay in support of his failure to protect claim. See, e.g., ECF No. 50 ¶¶ 34-37. Despite these allegations, Defendant Salvay is not identified as a defendant to Mr. Jackson's Eighth Amendment claim. ECF No. 50.

3

**B. Factual Background**

Through his verified Amended Complaint, Mr. Jackson alleges that on September 4, 2016, he was apprehended by SCI – Fayette prison officials for participating in a prison drug smuggling operation and was placed in disciplinary custody in the Restricted Housing Unit ("RHU"). ECF 50 ¶ 18. Three days later, inmate Grover was arrested for possession of drugs and was placed in disciplinary custody. Mr. Jackson alleges that Grover "is a high [-] ranking gang member" with a history of violence against others. Id. ¶¶ 19, 21. Grover labeled Mr. Jackson a "snitch" and "gave an order to his subordinate gang members to stab" him. Id. ¶¶ 29-30. Mr. Jackson alleges that inmate McClelland is a member of Grover's gang and has a history of violence. Id. ¶ 22.

Mr. Jackson's continued placement in the RHU was reviewed on November 29, 2016, by the Program Review Committee ("PRC"), staffed by Defendants Armel, Tift, and Hawkinberry. During the hearing, Mr. Jackson disclosed his fear of an attack upon his return to a general population housing unit. Id. ¶¶ 32-34. Mr. Jackson contends that the PRC determined he would be retained in the RHU pending transfer to another institution. Id. ¶ 34. Armel memorialized the need for a security review due to Mr. Jackson's fear of an attack if returned to general population and indicated that Mr. Jackson would be transferred to Administrative Custody within the RHU. Id. ¶ 35.

On December 2, 2016, Mr. Jackson received a DC-141 Report signed by Tift and indicating that Mr. Jackson would remain in Administrative Custody because he was "in danger by/from some person(s) in the facility and can not be protected by alternative means." Id. ¶ 41. Mr. Jackson alleges that due to prison regulations and job responsibilities, Defendants Lane, Salvay, John Doe,

---

In the interest of justice and based upon the additional allegations in the Amended Complaint, the Court will construe the Amended Complaint to assert an Eighth Amendment claim against Salvay.

the Western Regional Deputy DOC Secretary, and the Director of the Bureau of Treatment Services, should have investigated Mr. Jackson's safety concerns and authorized his transfer to another DOC facility, but failed to do so.  Id. ¶¶ 36-37.  Based on conversations during his PRC meeting and as reflected in the PRC memoranda, Mr. Jackson alleges that Defendants Tift, Armel, Yuhouse, Gates, Buzak, and Hawkinberry were aware of and acknowledged that Mr. Jackson was in danger and, for his protection, determined that Mr. Jackson would be retained in Administrative Custody pending transfer.  However, each failed to take steps to ensure he would not be assigned a cellmate, or otherwise ensure that Mr. Jackson would not be eligible for transfer to general population.  Id. ¶¶ 32-34, 41-45, 46-48.

On December 22, 2016, and over his repeated objections and requests for assistance, Mr. Jackson was transferred to general population. Id. ¶ 51. Three weeks later, inmate McClelland attacked Mr. Jackson with a razor blade, slashing his neck, and injuring Mr. Jackson's back.  Id. ¶¶ 56-58.  Mr. Jackson alleges that subsequent to the attack, Defendant Staley admitted his participation in a security review regarding Mr. Jackson's safety, and confirmed the determination that Mr. Jackson would be attacked "because of the situation with Grover." Id. ¶ 61.

As a result of the altercation with McClelland, Mr. Jackson was charged with a misconduct for fighting, and was returned to disciplinary custody in the RHU.  Mr. Jackson filed a grievance related to the attack and alleged that his injuries resulted from Defendants' failure to protect him from a known danger.  In response, Defendant Salvay denied any institutional knowledge that Mr. Jackson's safety would be in jeopardy in general population. Id. ¶ 64.  Defendants Lane and Varner reviewed Mr. Jackson's grievance appeals and stated there was no credible information that Mr. Jackson would be in danger if transferred to general population. Id. ¶¶ 67-72.  Mr. Jackson alleges

5

the handling of his grievance is evidence of a "cover up" of staff misconduct and indifference to inmate safety and is designed to defeat Mr. Jackson's claims for relief. Id. ¶¶ 73-76.

In accordance with the Court's Case Management Order, Mr. Jackson filed his Pretrial Narrative Statement and has provided the Court with copies of medical records, PRC status reports and the December 2, 2016 DC-141 Incident Report. ECF No. 87. The PRC reports indicate that on November 28, 2016, December 6, 2016, and December 8, 2016, Defendants Armel, Hawkinberry, Tift, Yuhouse, Gates, and Buzak, determined that a security review was necessary, and that Mr. Jackson would remain in Administrative Custody. A disciplinary report indicates that Mr. Jackson was involved in a physical altercation with inmate McClelland on January 13, 2017, and medical records reflect that Mr. Jackson was treated for a stab wound and back injury sustained in the incident. ECF No. 87-7 through ECF No. 87-10.

Defendants filed the pending Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment, Concise Statement of Material Facts, and supporting exhibits. ECF Nos. 94-97. Defendants argue that there is insufficient evidence that any Defendant was aware that inmate McClelland, "or any other inmate, presented a danger to Plaintiff at the time he was released to General Population," and Plaintiff therefore fails to present an Eighth Amendment claim. ECF No. 95 at 8. Defendants further contend that Mr. Jackson fails to point to any evidence that Defendants Varner, the Regional Deputy Secretary, or the Director of Bureau of Treatment Services (collectively, "Supervisory Defendants"), were personally involved in his housing decisions or had any knowledge of the danger he faced before his transfer and, as such, there is no basis upon which to impose § 1983 liability. Id. at 9-11. Finally, Defendants contend that because Mr. Jackson failed to request monetary relief in his prison grievance, he has procedurally defaulted on his claim for compensatory damages. Id. at 12-13.

Mr. Jackson was granted an extension of time until April 13, 2020 to file his response to Defendants' Motion for Summary Judgment but he has failed to do so. ECF No. 100. Despite this anomaly, the motion is ripe for consideration.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("[a] genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

7

issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted)).

As indicated, Mr. Jackson has not responded to the Motion for Summary Judgment or to the Defendants' Concise Statement of Material Facts that were filed on January 20, 2020. ECF Nos. 94 and 96.  Pursuant to the Local Rules of Court for the United States District Court for the Western District of Pennsylvania, the Court will deem as admitted any uncontroverted certain facts set forth in an opposing party's Concise Statement of Material Facts.  LCvR 56.C and 56.E.  This does not mean, however, that the Defendants are automatically entitled to summary judgment.  The United States Court of Appeals for the Third Circuit has held that even where a party fails to respond to a motion for summary judgment, Rule 56 of the Federal Rules of Civil Procedure requires the Court to first determine if the moving party has made a *prima facie* showing that it is entitled to judgment in its favor as a matter of law.  Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) ("Even though Rule 56(e) requires a non-moving party to 'set forth specific facts showing that there is a genuine issue for trial', it is 'well-settled ... that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond.'").  Instead, Defendants "are entitled to judgment as a matter of law only if the evidence of record supports such a finding."  Black Bear Energy Servs., Inc. v. Youngstown Pipe & Steel, LLC, No.15-50, 2020 WL 1286036, at *31 (W.D. Pa. Mar. 18, 2020).  See also Acosta v. WPN Corp., No. 14-1494, 2019 WL 3207999, at *1 (W.D. Pa. July 16, 2019) (citing United States v. Floyd, No. 12-1890, 2017 WL 5633203, at *2 (D. N.J. Nov. 21, 2017)  and Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d at 174-78).

In this case, the evidence of record includes not only the otherwise uncontroverted facts in the Concise Statement of Material Facts, but also the factual allegations set forth in Mr. Jackson's

8

verified Amended Complaint, to the extent they are based upon Mr. Jackson's personal knowledge. Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); see also Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000)(noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings"); Boomer v. Lewis, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."). In addition, the evidence of record includes the undisputed exhibits attached to Mr. Jackson's Pretrial Narrative Statement. The totality of the evidence will be examined in the light most favorable to Mr. Jackson, as the non-moving party, to determine if Defendants have made a showing that they are entitled to summary judgment as a matter of law based on the undisputed facts of record. Fed. R. Civ. P. 56(a).

## III. DISCUSSION

### A. Failure to Protect Claim

It is well-settled that "'[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.' As such, the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'" Bistrian v. Levi, 696 F.3d 352, 366–67 (3d Cir. 2012) (quoting Farmer v. Brennan, 511 U.S. 825, 833, 834 (1994); and citing Beers–Capitol v. Whetzel, 256 F.3d 120, 130–33 (3d Cir. 2001); Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)).

To establish a claim under § 1983 for failure to protect, the plaintiff must produce sufficient evidence showing (1) he was incarcerated under conditions posing a substantial risk of serious

harm; (2) each defendant was deliberately indifferent to that risk; and (3) the defendant's deliberate indifference caused him harm. Travillion v. Wetzel, 765 F. App'x 785, 790 (3d Cir. 2019) (citing Bistrian, 696 F.3d at 367, and Hamilton v. Leavy, 117 F.3d at 746). Deliberate indifference can be shown when a "[prison] official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. at 837.  The prison official must not only be aware of the facts to support an inference that a substantial risk of serious harm exists but must also draw that inference himself. Id. Consequently, prison officials can avoid liability by showing they were unaware of the danger, or they believed the risk was insubstantial or nonexistent. Bistrian, 696 F.3d at 367. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. (quoting Farmer, 511 U.S. at 844) (internal quotation marks omitted)).

Defendants argue that summary judgment is warranted because Mr. Jackson fails to present evidence that any Defendant was aware that inmate McClelland presented a specific risk of harm, and "there is nothing in the available record to establish that any Defendant had previous knowledge that Plaintiff was in danger from any specific inmate." ECF No. 95 at 7-8. Defendants point to Defendant Armel's Affidavit, wherein he opines that during each PRC meeting, Mr. Jackson would have been asked if he was "aware of any security concerns or otherwise anticipate safety issues if [he is] transferred to General Population before a transfer …," and that he "would not have been transferred if he expressed concerns." Id.; citing ECF No. 96 ¶¶ 34-36.

Defendants assertions are contradicted by the PRC Reports documenting Mr. Jackson's concern for his safety if returned to General Population, the participants' determination that a security review was needed, Mr. Jackson's request for an update of a planned transfer to a new

10

facility, and the specific finding that he would be confined to Administrative Custody because "the inmate is in danger by/from some person(s) in the facility and can not be protected by alternate means." ECF No. 97-1 at 3-5; ECF No. 87-2. These documents are signed by Defendants Tift, Armel, Hawkinberry, Yuhouse, Gates, and Buzak. In addition, Mr. Jackson's verified Amended Complaint alleges that Defendant Staley confided to Mr. Jackson that he had participated in a security review and determined that Mr. Jackson was in danger of an attack "because of the situation with inmate Grover." ECF No. 50 ¶ 61. At the summary judgment stage, this evidence is entitled to belief, with all inferences drawn in favor of Mr. Jackson. Accordingly, there is a genuine issue of material fact as to each of these identified Defendant's subjective knowledge of an undisputed objectively serious risk of harm. Defendants do not argue that in the face of this information, each took all necessary steps to ensure Mr. Jackson's protection by preventing his transfer to General Population, and therefore the reasonableness of Defendants conduct in light of the known risk of harm remains at issue. Under these circumstances, Defendants have not established that Defendants Tift, Armel, Hawkinberry, Yuhouse, Gates, Buzak and Staley are entitled to judgment in their favor as a matter of law.

As to Defendants Varner, Lane, Salvay, Doe, and the unidentified administrators, Mr. Jackson alleges that each failed to properly investigate his safety concerns, failed to effectuate a facility transfer, and/or made erroneous factual statements in response to a grievance submitted after the attack. ECF No. 50 ¶¶ 36-39, 64-74. However, Mr. Jackson presents no evidence that any of these individuals participated in or possessed any actual knowledge of the threat posed by a transfer to General Population, upon which a reasonable jury could conclude that each is liable for failing to protect the Plaintiff.

To maintain a § 1983 claim, each individual defendant "must have personal involvement in the alleged wrongdoing." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Thus, participation in the after-the-fact review of a grievance is insufficient to establish liability. Id. To that end, Mr. Jackson's allegations that an official responded inappropriately to a grievance do not establish that the official participated in or was involved in the underlying unconstitutional conduct. Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006).

Because Mr. Jackson has not alleged facts based on his personal knowledge nor presented any evidence from which it could be inferred that Defendants Varner, Salvay, Lane, Doe, or the unidentified administrative officials knew of the substantial risk of injury presented by transferring Mr. Jackson to General Population, summary judgment is properly entered as a matter of law as to these Defendants.

### B. Exhaustion of Remedies

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The United States Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (citing Woodford v. Ngo, 548 U.S. 81, 85 (2006) and Jones v. Bock, 549 U.S. 199, 211 (2007)).

Thus, under the PLRA's mandatory exhaustion requirement, the failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. Woodford, 548 U.S. at 93-95; see also Spruill v. Gillis, 372 F.3d 218, 227-30 (3d Cir. 2004). Further, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." Jones, 549 U.S. at 218; Spruill, 372 F.3d at 230-31 (the "prison grievance procedures supply the yardstick for measuring procedural default.").

For inmates incarcerated at SCI-Fayette, the DOC's grievance policy at DC-ADM 804 supplies "[t]he level of detail necessary in a grievance to comply with the grievance procedures." Jones, at 218.

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
> a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
>
> b. The inmate shall identify individuals directly involved in the event(s).
>
> c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.
>
> d. *If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.*

DC-ADM 804 (emphasis added).[5]  Based on the provision requiring a specific request for compensation, Defendants argue that Mr. Jackson has procedurally defaulted on his claim for money damages.

In pertinent part, Mr. Jackson stated in the grievance dated January 18, 2017:

---

[5] The policy in effect at the time Mr. Jackson's submitted his grievance may be found at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf

13

> *Relief* I want to go home within 30 days. I want transferred to Camp Hill or Coal Township until my release is finalized. I want my property replaced that was stolen. I was suppose to see parole in March and all this could have been avoided. But someone didn't do there job. Someone needs to be held accountable.

ECF No. 97-1 at 6. Mr. Jackson further states in the grievance that "I have sent all important paperwork to my family lawyer. I have made my mother aware, who will be in touch with this prison as well as Central Office." Id. In his verified Amended Complaint, Mr. Jackson alleges that on February 16, 2017, just one month after submitting this grievance, "Officer Michalsky came to Mr. Jackson's solitary confinement cell and asked him to sign a waiver claiming that Mr. Jackson was not in any danger in the Fayette general population. Mr. Jackson refused to sign." ECF No. 50 ¶ 66.

Based upon this evidence and applicable law, there are two impediments to resolution of default at the summary judgment stage. First, Mr. Jackson is no longer incarcerated, and Defendants have not addressed whether the PLRA continues to apply to preclude recovery of compensatory damages. The Third Circuit has recognized that a formerly incarcerated prisoner may amend his complaint to assert claims that relate back to the subject matter of the grievance and that such amendments are not subject to the PLRA. See, Garrett v. Wexford Health, 938 F.3d 69, 91 (3d Cir. 2019). Accordingly, it is plausible that Mr. Jackson's claim for compensatory damages is not otherwise precluded by the PLRA due to his release, and the issue is not properly before the Court at this time.

Second, in Mr. Jackson's verified Amended Complaint, he states that soon after submitting his grievance, a prison official requested that Mr. Jackson sign a "waiver" related to Defendants' knowledge that he was at risk of injury if transferred to the General Population. This "waiver" raises a question of fact related to whether prison officials understood Mr. Jackson's grievance and the statement therein referring to his "family lawyer" as a request for money damages, and

14

therefore sought to obtain a release from Mr. Jackson of his claims prior to the filing of a lawsuit. Such conduct may constitute evidence that the Defendants have waived any default by Mr. Jackson's failure to specifically request an award of monetary damages in his grievance.  See, Spruill, 372 F.3d at 222 ("the determination [of] whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials.").  And see, Rinaldi v. United States, 904 F.3d 257, 271 (3d Cir. 2018)("the Court has recognized an exception to the general rule of exhaustion 'where the State has actually passed upon the claim").

On the record presented and giving Mr. Jackson the benefit of all inferences as the nonmoving party, the Court is unable to resolve the issues of fact related to exhaustion of his claim for monetary compensation.  Small v. Camden Cty., 728 F.3d 265, 269 (3d Cir. 2013) (exhaustion is a question of law to be determined by a judge, after it resolves any disputed facts).  Accordingly, the Court finds that while default in this instance is a close question, Defendants have not established as a matter of law that Mr. Jackson is barred from recovering monetary damages, and summary judgment on this basis in denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is properly granted as to Defendants Varner, Salvay, Lane, Doe, the Regional Deputy Secretary, and the Director of Bureau of Treatment Services, but denied as to all remaining parties and claims.  Accordingly, the following Order is entered:

**ORDER**

AND NOW, this 1st day of May 2020, upon consideration of Defendants' Motion for Summary Judgment, ECF No. 94, and the evidence of record and Defendants' brief filed in support thereof, IT IS HEREBY ORDERED that the Motion for Summary Judgment is granted as to Defendants Varner, Salvay, Lane, Doe, the Regional Deputy Secretary, and the Director of Bureau of Treatment Services, but denied as to all remaining parties and claims.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

*/s/Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:   All counsel of record via CM/ECF

   Charles Jackson
   4338 North Sixth Street
   Harrisburg, PA 17110